# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ANDREW H.,**[1] | Case No. 6:23-cv-273-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MARTIN O'MALLEY,** Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Brent Wells, WELLS, MANNING, EITENMILLER, & TAYLOR, P.C., 474 Willamette Street Eugene, Oregon 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; and Joseph John LangKamer, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Andrew H. seeks judicial review of the final decision of the Commissioner of

the Social Security Administration (Commissioner) denying his application for Disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Insurance Benefits (DIB) under the Social Security Act (Act). For the reasons below, the Court affirms the decision of the administrative law judge (ALJ) and dismisses this case.

## STANDARD OF REVIEW

The decision of the administrative law judge (ALJ) is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB on October 16, 2020, alleging a disability onset date of August 31, 2018. AR 225-32. Plaintiff's date of birth is March 26, 1989, making him 29 years old on his alleged disability onset date. AR 226. Plaintiff alleged that he is unable to work due to post-traumatic stress disorder (PTSD) and tinnitus. AR 294.

The agency denied Plaintiff's claim both initially and upon reconsideration, and Plaintiff requested a hearing. AR 92-102, 110-11. Plaintiff and his attorney representative appeared before an ALJ for a telephonic hearing on September 21, 2022. AR 32-65. The ALJ issued a decision denying Plaintiff's claim for benefits on October 4, 2022. AR 14-31. Plaintiff requested a review of the ALJ's decision, AR 220-22, which the Appeals Council denied. AR 1-6. The ALJ's decision thus became the final decision of the Commissioner and Plaintiff timely appealed pursuant to 42 U.S.C. § 405(g).

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the analysis continues beyond step three, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC).

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

**C.  The ALJ's Decision**

As a preliminary matter for Plaintiff's DIB claim, the ALJ determined that Plaintiff's date last insured is December 31, 2023. AR 17. The ALJ then engaged in the sequential analysis. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 31, 2018, the alleged disability onset date. AR 19. At step two, the ALJ found the following severe, medically determinable impairments: PTSD, substance abuse/addiction, and anxiety disorder. AR 20. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20. The ALJ then found

that Plaintiff had the RFC to perform a full range of work at all exertional levels, with the

following limitations:

> [H]e can perform simple, routine tasks. He can tolerate occasional
> interaction with coworkers and supervisors but can tolerate no
> direct interaction with the general public. He cannot engage in
> tasks that require teamwork or close collaboration with coworkers.

AR 22.

At step four, the ALJ found Plaintiff unable to perform any past relevant work. AR 25. At

step five, the ALJ found Plaintiff had the ability to perform jobs that exist in significant numbers

in the national economy, specifically as a cleaner II, agricultural product packer, or auto detailer.

AR 26-27. The ALJ concluded that Plaintiff was not disabled under the Act from August 31,

2018, the application date, through October 4, 2022, the date of the ALJ's decision. AR 27.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) improperly rejecting his symptom testimony;

and (B) finding unpersuasive the medical opinions of David Hobbs, Ph.D. The Court addresses

each argument in turn.

### A.  Plaintiff's Subjective Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of

his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[2] There is a two-step

process for evaluating a claimant's testimony about the severity and limiting effect of the

claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by
SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy.
SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166
(Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in
this Opinion and Order.

determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, 2017 WL 5180304, at *2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4. The Commissioner

further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *7-8.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

At the hearing, Plaintiff testified that he could not work because of intense anxiety and depression. AR 55. He avoided driving during busy times because of his anxiety. AR 40, 46. He grocery shopped early in the morning to avoid people on the road and in the store. *Id.* at 46. He was fired from his last job; he stated, "I think maybe I was taking too many breaks." AR 47. He had difficulty performing the job and being around people. *Id.* He had been fired from another job because he could not get the hang of the computer system. AR 48. He also had issues with remembering products and being around loud noises in the work environment. *Id.* He was "really jumpy" around other people, which impacted his ability to concentrate. AR 49-50. He felt scared

when he turned a corner and saw someone there, and afterward felt jittery and uneasy. AR 50.

The feeling would last for fifteen to thirty minutes, and he would have to "go somewhere and

breathe it out and get in [his] head, tell [him]self [he is] fine, nothing's going to happen to [him]

and [he is] safe." *Id.* This could be triggered by people, loud noises, or just a sudden onset of

overwhelming anxiety. *Id.* It occurred at least once a day when he was by himself, and two to

three times a day when he had to do something like get groceries. AR 50-51. He experienced

waves of depression daily. AR 51. He checked his mail but otherwise left his apartment complex

only about twice a week for groceries and appointments at Veterans Affairs (VA). AR 51-52. He

backed out of appointments about 50% of the time. AR 52. He had hobbies that he no longer

engaged in. *Id.* He last drank alcohol on his birthday, which was the only alcohol he had

consumed since engaging in treatment through the VA in October 2021. AR 52-53. He was a

binge drinker before treatment and drank to self-medicate his symptoms of anxiety and

depression. AR 53-54.[3]

> In a written submission, Plaintiff reported "crippling" PTSD with related alcoholism after
leaving the military. AR 300. He reported that he has been "unable to hold a job due to [his]
paranoia, blackouts, unstable mood, anxiety, irregular sleep patterns, alcohol abuse, severe
depression, etc." *Id.* He described erratic sleep behaviors—sometimes he did not sleep for thirty-
six hours; at other times, he slept during the day instead of at night. AR 301. He struggled to
"care" about maintaining his personal hygiene. AR 302. He prepared only canned and frozen
meals. *Id.* He did not like to drive. AR 303. He had stopped spending time with people. AR 305.
He had been fired in the past because of problems getting along with other people. *Id.* He

---

[3] Plaintiff also described physical limitations at the hearing, which the ALJ rejected and
Plaintiff does not appeal. Thus, those issues are not before the Court.

"constantly check[ed] to make sure [his] door [was] locked. [He was] scared of being shot out in public. [He] patrol[ed] his apartment complex at night sometimes." AR 306.

The ALJ first provided the boilerplate statement that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 23. In his decision, the ALJ discussed Plaintiff's history of conservative treatment, AR 24, Plaintiff's daily activities, AR 21, 24, and stated that the "medical record does not support the severity of the claimant's symptoms." AR 23.

### 1. Specificity

Plaintiff argues that the ALJ was not sufficiently specific about which testimony he was discounting for this Court to meaningfully review the ALJ's decision. Plaintiff contends that because the ALJ "selectively summarized the medical record," and "generally concluded that the 'objective' evidence undermined [Plaintiff's] subjective symptom testimony," the ALJ's stated rationale for discounting Plaintiff's testimony is too vague. Other than with Plaintiff's activities of daily living, discussed separately below, the Court disagrees.

A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (emphasis in original). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible." *Id.* at 489. And reaching a conclusion about the plaintiff's testimony and summarizing the medical evidence, even if a district court can

reasonably draw inferences regarding inconsistencies from that summary of medical evidence, does not suffice to meet the ALJ's burden. *Id.* at 494. This is because a court may only affirm based on reasons asserted by the ALJ, and the district court may not "comb the administrative record to find specific conflicts." *Id.* (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)); *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . [']is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494)).

The ALJ specifically recited portions of Plaintiff's testimony and function report. AR 22-23. The ALJ then recited Plaintiff's medical history, highlighting objective evidence that the ALJ considered did not support that testimony. AR 23-24. Within the medical history discussion, the ALJ noted at times the objective evidence that contradicted aspects of Plaintiff's testimony, such as that his normal mental status examinations contrasted with his claimed limitations from PTSD and anxiety. AR 24. The ALJ also described aspects of the medical record that contradicted certain specific testimony by Plaintiff in evaluating Plaintiff's limitations at Step 3. AR 21.

The Ninth Circuit does not require an ALJ to "perform a line-by-line exegesis of the claimant's testimony." *Lambert*, 980 F.3d at 1277. And the Court "will not fault the agency merely for explaining its decision with 'less than ideal clarity.'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). "Even when an agency explains its decision with less than ideal clarity, [the reviewing court] must uphold it if the agency's path may reasonably be discerned." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quotation marks omitted). Nor does Plaintiff offer sections of the record showing his mental health symptoms were more limiting than the ALJ described them. The

Court can reasonably discern the ALJ's path regarding which testimony he found unsupported by what medical evidence. The ALJ's discussion of Plaintiff's testimony and the medical evidence was sufficient to "allow[] for meaningful review," *Brown-Hunter*, 806 F.3d at 492.

### 2. Conservative treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ reasonably considered Plaintiff's conservative treatment when discounting his testimony about the extent of his mental health limitations, and their impact on his ability to perform routine tasks and interact with others. Plaintiff alleged that his PTSD and anxiety caused problems dealing with others, made concentrating or learning things like new computer systems more difficult, and caused stress in performing many job tasks. AR 46-50. Plaintiff testified that he lost jobs due to these issues, and that they persisted throughout the relevant period. *Id.* But the ALJ noted that Plaintiff had not received "significant treatment" for his mental health symptoms, and had failed to take his prescribed medication. AR 24. The ALJ specifically highlighted that "Plaintiff admitted that he was receiving no current mental health treatment, and no medications," *id.*, and that he "admitted that he was supposed to be taking Abilify but was not taking it." *id.* (citing AR 399, 506, 575).

The record supports the ALJ's inference, reflecting a mental health examination in November 2018 to establish disability under the VA program, December 2020 and May 2021 psychiatric evaluations requested by the SSA, and treatment with the VA from October through December 2021 for substance abuse and PTSD. *See, e.g.*, AR 435, 505, 587-88, 604, 611, 624. In December 2021, Plaintiff reported to the VA that he "prefers to avoid medications and dedicated PTSD treatment" and instead preferred "to focus on his alcohol abuse." AR 630. Plaintiff does not contest his conservative treatment as a basis for the ALJ's conclusion in his briefing. Because substantial evidence supports the ALJ's conclusion that Plaintiff's conservative course of treatment undermined his testimony about the extent of the limitations caused by his mental health issues, this was a specific, clear, and convincing reason for the ALJ to discount Plaintiff's testimony.

### 3. Daily activities

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina*, 674 F.3d at 1112-13; *Orn*, 495 F.3d at 639. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Molina*, 674 F.3d at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("One does not need to be utterly incapacitated in order to be disabled." (quotation marks omitted)). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for

exercise, does not in any way detract from her credibility as to her overall disability."
*Vertigan*, 260 F.3d at 1050; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)
(requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be
relevant to his or her credibility and noting that "disability claimants should not be penalized for
attempting to lead normal lives in the face of their limitations"). Moreover, particularly with
certain conditions, cycles of improvement may be a common occurrence, and it is error for an
ALJ to pick out a few isolated instances of improvement over a period of months or years and to
treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v.*
*Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

Regarding Plaintiff's daily activities, the ALJ stated:

> The claimant's alleged limitations are not fully supported by his
> reported activities in the medical and other evidence of record. The
> claimant indicated that he could perform adequate self-care,
> prepare simple meals, run errands, do household chores, engage in
> hobbies, and go out to the store. These activities indicate a higher
> level of function than that alleged by the claimant.

AR 24.

The Ninth Circuit repeatedly has warned that these types of minimal activities alone are
not enough generally to discount a plaintiff's testimony. They may, however, discount a
plaintiff's testimony if they are inconsistent with a specific aspect of a plaintiff's claimed
limitations, such as playing video games for hours while claiming an inability to concentrate for
more than 30 minutes. The ALJ, however, must "identif[y] *which* testimony she found not
credible," and "explain[] *which* evidence contradicted that testimony." *See Lambert*, 980 F.3d
at 1277 (emphases in original). The ALJ never connected those dots, and thus erred. *See, e.g.*,
*Munoz v. O'Malley*, 2024 WL 1218541, at *10 (E.D. Cal. Mar. 21, 2024) ("Because the ALJ
merely summarized Plaintiff's activities, but failed to link them to any specific testimony, this is

not a specific, clear and convincing reason to discount Plaintiff's subjective complaints."); *Blount v. Kijakazi*, 2023 WL 4852331, at *7 (S.D. Cal. July 27, 2023) (rejecting daily living activities as a reason to discount a plaintiff's testimony because "[t]he ALJ did not identify the specific subjective symptom testimony that these activities undermine nor explain how the ability to perform the activities contradict the specific testimony").

The Court is left to guess as to what limitations or testimony conflict with Plaintiff's identified activities.[4] Ninth Circuit decisions, however, "make clear" that courts "may not take a general finding [of] an unspecified conflict" and then "comb the administrative record to find specific conflicts." *See Brown-Hunter*, 806 F.3d at 494. This is not a clear and convincing reason to discount Plaintiff's testimony. The error is harmless, however, because the ALJ provided other valid reasons.

### 4. Objective medical evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v.*

---

[4] In the Step Three analysis, the ALJ noted that Plaintiff's daily living activities were "consistent with no limitations in adapting or managing oneself." AR 21. The ALJ did not contrast Plaintiff's daily living activities with any testimony in this section, although the ALJ contrasted Plaintiff's mental status examinations generally showing good hygiene with his function report stating that he "sometimes" does not shower for three days or care about wearing clean clothes and "sometimes" does not find the motivation to clip his toenails. Even if this discussion could be construed as an invocation of Plaintiff's daily living activities, the Court does not find that the statements in Plaintiff's function report regarding sometimes not caring for certain aspects of his personal needs conflicts with generally having good hygiene while attending intermittent medical appointments.

*Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R.

§§ 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the

intensity and persistence of your pain or other symptoms or about the effect your symptoms have

on your ability to work solely because the available objective medical evidence does not

substantiate your statements").

  Concerning Plaintiff's testimony about his limitations from his mental health symptoms,

the ALJ reasonably considered the objective medical record as a relevant factor in discounting

these allegations. At the hearing and in his function report, Plaintiff discussed how his mental

health limitations made it difficult for him to work around others, concentrate or learn tasks, and

perform job duties. AR 44-51; 305. The ALJ juxtaposed these claimed limitations with several

mental status examinations showing Plaintiff had normal behavior, communicated with others,

made normal eye contact, had intact memory, had intact attention and concentration, and had an

appropriate attitude. AR 21 (citing AR 400, 439-40, 486, 509-10, 538, 567, 576); AR 24 (citing,

*e.g.*, AR 403-04, 410, 425, 480, 486, 601, 614, 622, 630, 635).[5] The ALJ also cited Plaintiff's

full orientation and normal attention, and linear, logical, and goal-directed thought processes.

AR 21, 23. At Plaintiff's mental status examinations, providers described Plaintiff as "calm and

friendly" and "personable and upbeat," and on multiple occasions noted that he showed "no

difficulty" interacting." *See, e.g.*, AR 511-12, 608, 630. There was no evidence of psychosis or a

formal thought disorder suggestive of disabling social interaction limitations. *See, e.g.*, AR 404,

410, 567. In fact, providers assessed Plaintiff as a person of average intelligence without signs of

---

[5] To support the statement that Plaintiff's mental status examinations contradicted his claimed limitations from PTSD, substance abuse, and anxiety, the ALJ cited large sections of the record, entire groups of submitted provider records, such as AR 376-427, 456-504, 549-93, 594-631. Such citations are too broad to allow for meaningful appellate review.

serious cognitive or memory deficits. AR 410, 539, 567, 608, 630. Taken together, these countervailing findings amount to substantial evidence supporting the ALJ's decision to discount Plaintiff's testimony about his limitations from PTSD and anxiety because they were unsupported by the objective record evidence.

## B. Medical Opinion Evidence

### 1. Legal Standard

For disability claims filed on or after March 27, 2017, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. § 404.1520c(a). The 2017 regulations eliminated the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the 2017 regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

### 2. Analysis

Dr. David Hobbs, Ph.D., completed a PTSD Compensation and Pension Examination of Plaintiff on behalf of the VA on November 2, 2018. AR 421-26. Plaintiff reported experiencing impulsive anger, hypervigilance, recurrent daily intrusive memories, daily extreme anxiety with panic attacks, avoidance of trauma reminders, exaggerated startle response, difficulty concentrating, restless sleep that consisted of 4-6 hours per night, and feelings of hopelessness with suicidal ideation. AR 421. He reported a childhood history of physical abuse. AR 422. After his military service, Plaintiff had a general dissatisfaction with and dislike for people. *Id.* He had few friends due largely to trust issues. *Id.* He typically stayed close to home, where he felt safe. *Id.* He avoided interacting with others. *Id.* His temper and emotional distancing made it difficult to maintain friendships and to pursue intimate relationships. *Id.*

Plaintiff reported that he used substances to self-medicate his PTSD symptoms, particularly impulsive anger and anxiety. AR 421. He typically consumed four twenty-four ounce cans of malt liquor per day. AR 422. At times, he would drink six or more. AR 422-23. He had also used cocaine on weekends "to feel better." AR 423. He expressed interest in substance abuse treatment. *Id.* He had lost his job as a welder three months earlier and was told that he had liquor on his breath "too many times." AR 422. While employed, he had to leave work early due

to panic attacks. *Id.* He had been terminated for losing his temper as well. *Id.* He experienced

weekly blackouts, during which he experienced flashbacks of military trauma. AR 425.

Dr. Hobbs noted that Plaintiff's mood was anxious and depressed, and his affect was

consistent with his mood. *Id.* Plaintiff scored 79 points on the PCL-5 for PTSD, which was in the

severe range of symptoms. *Id.* Dr. Hobbs diagnosed Plaintiff with PTSD and polysubstance

dependence. AR 421. He noted that Plaintiff's symptoms of anxiety and depression were caused

by his PTSD. *Id.* Dr. Hobbs opined that Plaintiff's social and occupational impairment was

primarily due to PTSD but noted that polysubstance dependence could contribute by making his

symptoms more difficult to manage. AR 422. Dr. Hobbs concluded that Plaintiff had symptoms

of PTSD such as "[s]leep disturbance," "[p]roblems with concentration," and "[e]xaggerated

startle response." AR 424. Dr. Hobbs opined that Plaintiff's PTSD "results in significant

impairment in [Plaintiff's] social and occupational functioning." AR 425. Plaintiff argues that the

ALJ erred in evaluating Dr. Hobbs' opinion.

The ALJ discounted Dr. Hobbs' opinion in part because he relied heavily on Plaintiff's

self-reporting of symptoms. AR 25. The ALJ noted the inconsistencies between Plaintiff's self-

reports and the contemporaneous medical evidence. *Id.* The ALJ also discounted Dr. Hobbs'

opinion as inconsistent with the objective longitudinal evidence of record, including with two

opinions provided by consultative examiner Zane Curtis, DO, and Plaintiff's "mostly normal

mental status examinations." *Id.*[6]

Regarding supportability, the ALJ adequately discussed the strength of the evidence

underlying Dr. Hobbs' opinion when finding it "less persuasive." The supportability factor

_____

[6] In discussing the longitudinal record, the ALJ also discussed at length the
December 2020 and May 2021 opinions by Dr. Curtis. *See* AR 23 (citing AR 435-443, 505-13).

requires an ALJ to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[]." 20 C.F.R. § 404.1520c(c)(1). The ALJ reasonably found that Dr. Hobbs' opinion lacked supportability because his analysis was based almost entirely on Plaintiff's subjective reports, and because his objective examination findings showed relatively stable mental health. AR 25. "If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim*, 763 F.3d at 1162 (quotation marks omitted). "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Plaintiff argues that *Buck* applies. Dr. Hobbs, however, did not perform the objective psychiatric tests and other objective measures of the type on which to base findings of significant psychiatric limitations. Additionally, what objective measures he did employ, as noted by the ALJ, resulted in relatively normal findings. As did much of the other objective evidence in the record.

The ALJ also highlighted that Dr. Hobbs did not provide "specific functional limitations," which limited the persuasive force of his medical opinion. AR 25. Thus, the opinion lacked support, i.e., an adequate explanation of specific functional limitations that could be considered as potential RFC limitations. See 20 C.F.R. § 404.1520c(c)(1); *see also id.* § 404.1513(a)(2)(ii); *cf. Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (stating that if a doctor's opinion fails to specify functional limitations, "the ALJ could reasonably conclude these characterizations were inadequate for determining RFC"). The ALJ adequately considered the

supportability of Dr. Hobbs' opinion by examining the bases for his conclusions, and discounting them for their and lack of support, and lack of explanation.

The ALJ also adequately addressed the consistency of Dr. Hobbs' opinion when finding it unpersuasive. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ reasonably compared Dr. Hobbs' opinion with two opinions provided by Dr. Curtis. AR 24-25. Dr. Curtis evaluated Plaintiff twice—in December 2020 (AR 435-43) and May 2021 (AR 505-13)—and found Plaintiff's mental health largely stable, other than anxiousness and impaired insight. *See* AR 435, 438-440, 508-510. The ALJ also found Dr. Curtis's opinions more valuable because they were "consistent with the longitudinal evidence of record." AR 24.

Finally, the ALJ contrasted Dr. Hobbs' findings with Plaintiff's mostly normal mental status examinations. AR 25. The ALJ cited many of the same mental status examinations he cited throughout his opinion. As noted in discussing the ALJ's evaluation of Plaintiff's testimony, many of the mental status examinations in the medical record contain normal findings, including regarding Plaintiff's demeanor, presentation, concentration, and thought processes. The Court finds that the ALJ sufficiently addressed the consistency and supportability factors, and supported his decision to discount Dr. Hobbs' opinion with substantial evidence.[7]

---

[7] Even if the ALJ erred in his analysis of Dr. Hobbs' opinion, Plaintiff failed to show harmful error. An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). And the party claiming error has the burden "to demonstrate not only the error, but also that it affected his [or her] 'substantial rights,' which is to say, not merely his [or her] procedural rights." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Plaintiff does not point to any aspect of Dr. Hobbs' opinion that, if accepted, would affect the RFC determination, or undermine the ALJ's nondisability decision. Plaintiff argues that Dr. Hobbs opined as to Plaintiff's "significant limitations," but part of the problem with Dr. Hobbs not opining as to specific *functional*

**CONCLUSION**

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled and

DISMISSES this case.

**IT IS SO ORDERED**.

DATED this 22nd day of April, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

*limitations* is that such an opinion does not translate well to the RFC context. *See Ford*, 950 F.3d
at 1156. Absent that, the Court finds that Plaintiff has failed to carry his burden to show how any
error in analyzing Dr. Hobbs' opinion would have been harmful.